Good morning. May it please the Court, Elizabeth McKean of O'Melveny & Myers for Defendant and Appellant, OneWest Bank. Now that we're on the subject of CAFA, this case presents the question of whether a plaintiff who originally seeks to represent a nationwide class can secure remand by amending her complaint post-CAFA removal to limit her putative class to citizens of the forum state. The answer under CAFA, which expressly provides in 28 U.S.C. section 1332d7, that the citizenship of the plaintiff class must be assessed at the time of the filing of the pleading that gives rise to federal jurisdiction, is a resounding no. For that reason, the district court erred in remanding the case on the basis of a CAFA exception that did not apply based on the citizenship of the nationwide class that existed at the time the case was removed. Well, is everything under CAFA? I mean, obviously, as I understand CAFA, the purpose behind it is that they didn't want people they didn't want plaintiffs seeking venues that were particularly more favorable to them. They wanted to have they somehow wanted to nationalize that these big lawsuits that there were that the federal courts could possibly be fairer as opposed to pockets of places that might be more favorable to plaintiffs or might be more favorable to defendants. So one of the things that I noticed, I don't think that you really argued, but the Supreme Court case in standard fire insurance versus Knowles, and then I think subsequently there was a Ninth Circuit case that I was on that had to do with it, and it had to do with whether the parties had within their control to say it's not over $5 million. And the Supreme Court said no. You know, you said it was when you filed it, that's when it's basically determined, and we're not going to let the parties sort of manipulate the jurisdiction under CAFA. So I'm sort of curious why you didn't make that argument and an analogy that that part, that that's an it's not the exact section under CAFA, but it seems to give some a little bit of a mirror as to what the Supreme Court's thinking about this. I agree that that's a good analogy. I would say that two points in response to that. First, I don't think you need to get to an analogy because the language of the statute itself is so clear as to this point. But as to whether or not that provides a good analog in terms of this sort of theme of once CAFA jurisdiction, always CAFA jurisdiction, that is very consistent with I think the authorities we cite in our brief like Lopez, like United Steel, like Vizendi, all of which involved this Court saying that various post-removal developments in a case that was properly removed under CAFA would not defeat jurisdiction that was otherwise proper at the time of removal. Specifically, Lopez involved a case where the class claims were dismissed after removal, and the Court said that remand would not be proper. In United Steel, certification was denied after removal, and the Ninth Circuit again held that remand was not proper. And in Vizendi — So from your perspective, you're saying that the plain language and also the purpose behind the statute is different than, say, generally in Federal court, that a lot of times if it's not a CAFA case. Sometimes things happen in cases and a Federal court can decide it just doesn't belong in Federal court anymore, and they don't want to exercise jurisdiction over it, and they send it back to State court. That's exactly right. There are circumstances where, for example, a Federal question claim may be dismissed and the Court declines to exercise supplemental jurisdiction over remaining State law claims. That's an example of when a Federal court may properly decline to exercise supplemental jurisdiction. CAFA entirely takes the analysis out of that realm precisely for the reason that you identified, which is the purpose of the statute. Well, if they had filed this California class initially, it might not have been removable, right? I think if the second amended complaint had been the pleading that was originally filed, while one could argue that it would have been properly removed, there likely would have been grounds to remand under one of the D-4 exceptions, either the local or the State, because all of the citizens of the putative class in the second amended complaint are alleged to be California citizens. But when it was filed, it was a national class, right? Correct. When the original complaint pled a national class, and in fact, initially after removal, plaintiff amended her complaint again in Federal court to again assert claims on behalf of a nationwide class. It was not until her second amended complaint that she narrowed the class definition to California only. Wasn't it after the district court severed the case? Correct. The district court entered an order finding that one plaintiff's claims were not properly joined, and so that affected the claims against a defendant assurant, and the court directed that those claims be severed from the claims of the remaining plaintiff, Ms. Doyle, who is the current plaintiff of the case. Well, did that change the class at that point, though, or was it the amended complaint that was filed after that, making it a California class? What happened was when the court found that there had been a misjoinder in necessitating severance, he ordered plaintiff to file an amended complaint and directed that she go forward on behalf of Ms. Doyle in this court. When she did that, as part of her amendment, instead of asserting a nationwide class on behalf of Ms. Doyle, as she had done previously, the amended complaint said, okay, now I'm just seeking to proceed on behalf of California-only residents. So CAFA says under that circumstance, the court, district court, still has original jurisdiction and may hear that case, but it doesn't require the district court to hold on to that case if the judge doesn't think it's any longer acceptable. I think CAFA does require that. I think when you look at Section D7, what it says is that for purposes of applying the exceptions in paragraph 2 through 6 of CAFA, D3, of course, is what Judge Otero cited in his order as the basis for remand. D7 says that for purposes of applying that very exception, you have to look at the citizenship of the parties at the time of removal. And, of course, in his order, part of the reason Judge Otero concluded that he had discretion to remand under D3 was because he improperly looked to the citizenship as defined in that post-removal second amended complaint, the California-only class. Had he looked at the citizenship at the time of removal, he would have necessarily concluded that D3 did not afford him the discretion to remand. Well, I'm just wondering if he hadn't cited D3 and just decided as his own inherent powers that he didn't want to waste feral resources over a case that had all California in it, whether he could just decide to dismiss it. It's not as though the claim would not go forward. I don't think CAFA would have afforded him the ability to do that on the basis of a CAFA exception the way he did. To be clear, there are other ways that the defendants would have urged Judge Otero to dispense with a case. We had a pending motion for judgment on the pleading. So we agree that it should have been dismissed, but we do not agree that it should have been remanded, and we don't think CAFA afforded him the discretion to do what he did under D3. Moving on, if you accept the first and main point, which is that the plain language of D7 requires the citizenship of the plaintiff class to be evaluated as of the time of removal, the second point that makes the district court's error clear is that as of the time of removal, with respect to that nationwide class, it is very clear that none of the CAFA exceptions would have applied to permit remand. Are the circuits split on that question? No, they are not, that I'm aware of. The Third Circuit is the outlier with respect to a particular issue that we don't think is squarely presented here. The Third Circuit in Kauffman held that essentially, it's kind of a confusing opinion, but seems to have held that there's no time constraint for analyzing the D3 and the D4 CAFA exceptions. But importantly in Kauffman, the issue was the citizenship of the various defendants, not the citizenship of the members of the plaintiff class, which is of course what D7 speaks directly to. So in looking at the citizenship of the nationwide class at the time of removal, it would have been plaintiff's burden below to show that more than one-third of the members of that putative nationwide class were citizens of California in order to urge remand under D3. And there is not one iota of evidence in the record that more than one-third of that nationwide class were citizens of California. So because plaintiff didn't meet her burden on that point, it was error for the district court to remand on that basis. Did the district court make any finding as to whether there were less than one-third? The district court in a footnote in the opinion referenced some of the facts that were cited by the removing defendant assurant in its removal papers as it characterized them as being inconclusive of the question of the constituency of the nationwide class. One thing that's particularly important about that is, of course, it was not assurant's anything other than the minimal diversity that CAFA requires. Mondragon stands for the proposition that that's plaintiff's burden. And so because the district court was erroneously focused on the citizenship of this newly minted California-only putative class, it essentially not only improperly sidestepped the issue of the citizenship of the putative nationwide class, but if anything, improperly put the burden on the party seeking to stay in Federal court rather than the party requesting remand to elucidate that issue. All right. If there are no further questions, I'd like to save my time for rebuttal. Thank you.  Good afternoon, Your Honors. Good afternoon. On behalf of the appellee and the plaintiffs, while acknowledging that generally, generally, CAFA jurisdiction is analyzed and determined at time of removal, the district court in this case also noted, and I think correctly, that the 1332D doesn't place any time limits on when jurisdiction can be analyzed, that neither 1332D-3 or 1332D-4 are expressly limited by that statute, by those statutes, to an analysis of the time of removal when it comes to jurisdiction purposes. Well, but what you're, it does seem 1332D-7 provides that citizenship for purposes of all of the potentially relevant CAFA exceptions should be assessed as of the date of the pleading indicating the existence of Federal jurisdiction. And cases, you've got cases like Mondragon, and it just seems that Mondragon confirms these exceptions must be assessed on the date the case became removable. And I would say, the plain reading of Section 7 there that talks about the timing says we're going to look at jurisdiction at the time of the complaint, an amended complaint, or if there is no jurisdiction originally, no Federal claims, then at such time as that case can be removed. So there's the language, the expressed language under that subsection 7 talks about amended complaints. And in this case, the district court said, hey, look, the Supreme Court, Carnegie Mellon, for example, says that district courts generally have discretion to remand a properly removed case. Is that a CAFA case? It is not a CAFA case. Okay. That's what I want you to address. It just seems like if CAFA is to be given any meaning, what district courts can normally do on a non-CAFA case, it's not the same. That's, I mean, and there are, there's, you know, the Supreme Court case in Standard Fire. There are, you know, that it, I mean, there are cases that keep saying what you don't want to hear. There are. And I will tell you that the cases that keep saying that, they're not like this case. They are not. They are mostly, in this case in particular. And the district court spent a fair amount of time in his decision saying, we've got to look to the circumstance of this particular case here. There's no explicit, the rules under the CAFA removal statute don't explicitly say, I can't use my discretion as a district court. And in this case, we have a case that's very early on in the litigation process. We have a stipulation entered by all parties, including the appellate, which says. But the plaintiffs originally were opposing that. But you could have, you could have filed this in California court. You could have done a California class. And at that point, they might not have been able to remove you, right? I think so. Probably so. We originally did file it to California court and it was removed. But we could have pled it differently at the get go. Because you pled a national class, right? And we would have had some differences at this point. Correct. I agree with that. Well, I guess that you're still not wrestling to me with what CAFA means. And it seems that the purpose of CAFA was to not, Congress was concerned with plaintiffs trying to manipulate jurisdiction with post removal amendments. And if you look at Burlington, that it just seems like it's, if this were not a CAFA case, everything that you say resonates with me. But the fact that it's a CAFA case, you know, repeatedly, they're different. And here's where they're, they're different. But I will tell you that the judges I mean, they're different in terms of when we need to get our opinion out to you, too. That is very different. It is remarkable, Your Honor. There was a case that says, talked about the purpose of CAFA. It said, CAFA exceptions are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to the state. And Judge Otero's order in this case serves that exact purpose. We have a case now where we have the non-Californian defendant is out. The remaining defendants, California defendants, they stipulated that the non-diverse, the diverse defendant is gone. We don't have the non-California defendant in this case. It's all California claims at this point. How many people did you get rid of when you redefined the class? Well, the initial redefining for the First Amendment complaint was actually to name a correct party. And I'll touch on that point. No, but when you refiled just a California class, how many people did you get rid of? When we filed it as a, well, I don't know. I don't know the answer to that question. When we redefined our class to be people in California who were charged for this forced place insurance. Well, appellants are saying that if you had brought up what you're arguing now at the time that it was removed, that you couldn't, you wouldn't have prevailed on the one-third issue. I don't believe that that's true either. Well, there's nothing in this record, and you didn't do it, right? That's correct. Remember, though, Your Honor, that Judge Otero, he didn't rule on 1332d-4 on either one of those prongs. He said, look, I'm not even going to look at that. We're going to rule on this amended complaint because parties stipulated that the plaintiffs could amend it. I ordered that they could amend it. There's nothing in CAFA that says I have to look at the time of removal. So we're going to look at this definition. Well, how can that be right if it says that 1332d-7 says citizenship? So how can he be right that there's nothing in CAFA that says that? I don't think he said that, Your Honor. I think Judge Otero looked at the citizenship, but he looked at the later class definition. If he had looked at the earlier class definition, I still think that this Court, Judge Otero, could have found that this Court falls into the 1332d-3 exception. He didn't look at that. He didn't look at or consider the first class definition. And his opinion expressly states as much. So if this were sent back to Judge Otero, then I still think that he could decide that this case would fall, even as originally pled, that this case could fall within 1332d-3 by finding that there's one. But if, and I'm not saying what this Court would say, but if the Court said it had to be determined at the time of removal and it wasn't and you can't do what you did, he then would not be able to do that, right? But he would then go back to step one. If this Court said, hey, you can't do what you did. You need to go back to the first complaint. Take a look at it and look at the exceptions under the first complaint class definition. We have, we have. The time of removal is gone and no one challenged at that time. So. But we filed, when the plaintiffs filed, they did file a motion. There was a motion to remand that was filed after the, after the Second Amendment complaint. And we said at that time, I think the plaintiffs argued all basis for, as basis for remand, 1332d-3 and 4, I believe, Your Honor. So it was in there. But the Court's ruling, I think the Court's ruling said specifically, I'm not considering the mandatory exclusions here. I'm looking at discretionary abstention in this case. If he went, if we went back and looked at the original class definition, it's quite possible that this judge could find, I think that it's possible that he could find that, well, yeah, 1332d-3 would still apply because we have Balboa is the, is the defendant insurer. And that's a California company. And it's certainly possible that at least a third of those forced place insurance policies are right here in the State of California. So that's certainly possible. I'm not sure if that entire, did that answer, was that the question the Court had? Sort of. So in this case, though, I say the real basis for Judge Otero's decision, I think, is the sound one, is the plain language of Section 7 does not delimit the time for analysis as specifically and only the time of removal. And I don't think a CAFA could flip. Well, it does enter the date of filing of the complaint or amended complaint. Or amended complaint. That's correct, Your Honor. Or. And in this case. Or an amended complaint or, I'm not quite sure how to read that last line. So I suppose you could construe it as a complaint or amended complaint, but. And that's how I would like this Court to construe it. Or, but wouldn't it have had to have been filed, the amended complaint would have had to have been filed in State court. Well, it doesn't say that. It doesn't say that. The plain language of this statute does not say that. I think the plain language of the statute does not conflict with a court's general authority and discretion to take a look at a case and say, hey, look, I have the flexibility and the authority to remand a properly removed case by looking at judicial economy, issues of fairness. And in this case, does remanding. Does it bother you at all that that section talks about looking at the plaintiff classes as opposed to the defendant classes? And Kauffman was applying the local controversy exception to the defendant. Yeah, I don't know exactly why that would matter. I mean, if we're looking at. If Kauffman says. It's in the statute, plaintiff class. It does. I know. It does, Your Honor. That's why we're talking about it. It says that. But the policy is the same. If we're talking. If it's a proper case. If the court should have. If the district court should have the authority to remand a properly removed case and look at items and look at jurisdiction after the time of removal, then the policy is the same. The policy is, hey, this is a case that properly belongs in State court, and there's good reasons for it. And in this case, Judge Otero looked at and analyzed the reasons. Why this court. Why this case should be back in State court, and he found there are good reasons for it. And he said, I've run down those, and I don't want to run down them again. But he says this. It would fulfill the mandates of CAFA, too, if this case were not in Federal court. If there.  Thank you, Judge. Thank you, Your Honor. I'd like to make a few quick points and rebuttal. Can you tell me what Judge Otero, if we agreed with your position right here, what he can do in going back? I, well, first. He can't do it. If we said he can't do what he did, then what can happen? What I think he should do is. Well, what can he do? He can exercise jurisdiction over this action on the basis of the nation, the citizenship of the nationwide class that was pled. Plaintiffs would have to show, it is their burden to show that one of CAFA's exceptions would have applied even though a nationwide class was pled. You cannot get into the D3 discretionary territory unless more than one-third of the members of that putative nationwide class are citizens of California. They put in no evidence on this point whatsoever. Well, they didn't then. He told them he wasn't interested in that issue, that he, his view was that he should do it for a different reason. So he doesn't, didn't foreclose them from ever putting it in. He said that you don't have to reach that question. But he said I'm going to consider that issue. They might have put in evidence. I think something that's important to appreciate is that Judge Otero's application or use of Section D3 would have been inappropriate regardless of the time that he assessed the citizenship of the parties. If you look at the citizenship of the parties at the time the case was filed, it's a nationwide class. D3 doesn't apply. If you look at the citizenship of the parties at the time of the second amendment complaint, it's a California-only class. D3 doesn't apply then either because it only applies if it's between one-third and two-thirds. So to answer the question of what are Otero's options. Scalia. Judge Otero's options when this case is remanded, if it is remanded. I think the best option would be that he's required to exercise Catholic jurisdiction because that's what's consistent with the purpose of the statute. Well, it's not really consistent with the purpose of the statute, but that's an argument about which option he should pick if he has more than one option. But that we might leave to him if he has more than one option. To say that the statute really wanted to, under circumstances like this, where it's not the plaintiffs trying to change things for their advantage, but a court ruling that this should be limited to the type of case that under CAFA was supposed to be a State objection, where there is no interest in this other than in the State court, but it may be prevented from doing that by the literal language of the statute. But I don't think anyone would say if you had a case that had only California court ruling that they really intended that that be litigated as a national class rather than a local class, which is what it is now. I could agree with you maybe that that's a requirement, but to say that that was the purpose of CAFA to have this type of case not tried in California, I doubt that the suspicious plaintiffs would have found that suspicion justified where it's the court, not the plaintiffs who sought this. Well, if I could respond, I'd like to say two things about that. First, it's very clear that it is the plaintiffs who sought this, not the courts. Plaintiffs specifically amended their complaint to narrow the putative class definition not because they truly think this is something unique to California. There can be no doubt that this case is national in scope. Plaintiffs' lead counsel in this case has sued my client in a very similar case in a nationwide class action that is now pending on the same topics in the Southern District of Florida. There are over 100 cases on the topic of lender-placed insurance currently pending in various Federal courts. The idea that there is something unique to California about this dispute is simply incorrect. This is exactly the kind of case that CAFA was designed to ensure stays in Federal court to avoid the forum shopping that could happen if, like what happened in this case, Judge Otero made unfavorable comments to plaintiff from the bench. Lo and behold, the next chance they got, they amended to try to secure remand to state court, notwithstanding the fact that based on their filing of another nationwide class action against the same entity, based on the same conduct, they clearly think there is something national in scope about the conduct. It's not national. The defendants requested that the claims of the two plaintiffs be severed because one plaintiff was a California resident and her property is located in California. The other plaintiff was a resident. But her property was in Arizona. That's the New York one. Exactly. There was also a New York resident who had a property in Arizona. And so the defendants came forward and said, look, that gentleman's claims appear to have no connection to this forum. Oughtn't they be sent to Arizona? And Judge Otero agreed with that and ordered that those claims be severed. But that doesn't speak to the fact that Ms. Doyle, whose property was in California and who is the remaining plaintiff, had pled through two versions of her complaint that she sought to represent a nationwide class. Okay. But I guess from the standpoint, it appears what's at issue here is when you determine certain things under CAFA. I would agree with that, yes. And so here, the determination that the judge, your position is that the determination that the judge made, it had to be done at the time of removal. And the fact that they later tried to define the class as statewide, you couldn't make that determination. It had to be when it was a national class and at the time of removal. That is what D-7 says. It says it has to be measured by that. It doesn't say anything about when it has to be done. I agree with that. Okay. I think the question is as of the time of removal. For example, if this ---- And there has been no determination of that question. We are not arguing that the reason that remand was proper has anything to do with the timing of when the remand motion itself was made. The point is that for assessing the citizenship, you have to take a snapshot that existed at the citizenship at the time of removal. It's two different issues. I think that's what Section 7 is about. What do you assess, not when do you assess it. I agree with that. And that's why Otero erred by looking at this. Judge Otero. I apologize, Your Honor. That's why Judge Otero erred in assessing the citizenship not at the time of removal but as of a later date. All right. But if this Court, and I'm not saying what the Court would, if this Court were to say that was there, then does it go back to him to assess it at the proper time? I think there are two choices. I think either it goes back to him with the direction to exercise jurisdiction because plaintiff had a burden that has never been met, or it goes back to him to say, based on the pleading of the nationwide class at the time of removal, can plaintiff now somehow demonstrate that more than one-third of those putative class members were, in fact, citizens of California. I think the former choice is the better one, but I think both are options. But if you said, no, there's no timing requirement, and that issue has never been determined, and that the error that's claimed by Judge Otero, if he were told what the law is, according to what you say the law is, then it would seem that he could make that assessment. He could choose, he could go back and apply the capital law properly, right? Yes, that would be an option. All right. Thank you very much. Thank you. The case that's erred will be submitted. The Court stands in recess for the day.
judges: REINHARDT, WARDLAW, CALLAHAN